**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

UNITED STATES OF AMERICA

v.                                                          CASE NO. 1:24-CR-52-HAB-ALT

QUYON D. ROGERS

## OPINION AND ORDER

Defendant Quyon D. Rogers ("Rogers") pleaded guilty to two counts of a ten-count indictment for his involvement in a scheme to distribute fentanyl and methamphetamine. (ECF 60, 64). The United States Probation Office ("Probation") prepared a draft presentence investigation report ("PSR") in advance of Rogers's sentencing. (ECF 78). Although Rogers did not object to the first draft of the PSR, the government did. The government contended that Rogers should receive a two-point enhancement for being a leader or organizer of criminal activity under U.S.S.G. §3B1.1(c) ("leader/organizer enhancement") because he acted as an organizer, leader, manager, or supervisor over his co-defendant Jamarkis Carter ("Carter"). (ECF 81). Probation agreed with the government and revised the PSR to reflect the two-point enhancement. (ECF 82, 83).

Rogers now objects to the government's request for the leader/organizer enhancement. (ECF 80). He disputes the government's characterization, arguing that he and his co-defendant Jamarkis Carter were equal participants in their drug trafficking operation. The objection is now fully briefed and ripe for ruling. (ECF 86, 87, 88). For the following reasons, Rogers's objection will be OVERRULED.

## BACKGROUND

In December 2024, Rogers and Carter were charged in a ten-count indictment for distributing controlled substances and conspiracy to distribute controlled substances. (ECF 7). Both men have since entered separate guilty pleas, and Carter was sentenced in December 2025. (ECF 50, 60, 75). After entering his guilty plea, Probation prepared a draft PSR ahead of Rogers's sentencing. (ECF 78). The government objected, arguing that Rogers should have received a two-point enhancement for being a leader, organizer, manager, or supervisor of criminal activity under U.S.S.G. § 3B1.1(c). (ECF 81).

The government based its objection on two instances in which it believes Rogers supervised Carter. Both Carter and Rogers engaged in transactions with confidential human sources who were working with law enforcement. (ECF 78, ¶¶ 10–11). Carter primarily dealt with an individual identified as CHS1 and Rogers primarily dealt with a separate individual identified as CHS2. (*Id.*).

Rogers wound up fronting fentanyl pills to CHS2. (*Id.* ¶ 36–39). Eight days later, CHS2 contacted Rogers to set up a time and place to pay for the fronted pills. (*Id.* ¶ 40). Rogers told CHS2 that he would check with his brother and call him back. (*Id.*). Roughly fifteen minutes later, CHS2 called Rogers again. (*Id.*). On this second call, Rogers asked CHS2 if he was okay with meeting Carter for the exchange. (*Id.*). CHS2 confirmed that they would be fine meeting with Carter and arranged for the payment to be made at the Glenbrook Mall. (*Id.*). Law enforcement observed and recorded the exchange later that day, where CHS2 gave a $1,500 payment to Carter and explained to him that the money was for pills Rogers had fronted. (*Id.* ¶ 42).

One week after this first exchange, CHS2 met again with law enforcement. (*Id.* ¶ 43). CHS2 explained that Rogers was out of town but expected that Rogers would send someone else to make

an anticipated drug delivery. (*Id.*). CHS2 called Rogers, who confirmed that he was in Indianapolis but would put the deal together and have Carter make the delivery. (*Id.*). Rogers promptly called CHS2 and told them to head to Hamilton Park in twenty minutes. (*Id.* ¶ 44). Mere minutes after Rogers told CHS2 to head towards Hamilton Park, law enforcement posted outside Carter's house observed him leave his residence and enter his car. (*Id.* ¶ 45). Less than an hour later, surveilling investigators saw Carter arrive at a house near Hamilton Park and enter the residence. (*Id.* ¶ 46). Rogers then called CHS2 and told them to go to the residence Carter had just arrived at. (*Id.*). When CHS2 arrived at the residence, Rogers spoke with them on the phone and over Facetime to direct them to the back deck to pick up methamphetamine. (*Id.*). CHS2 struggled to locate the methamphetamine. (*Id.*). Eventually, Carter opened the back door and pointed CHS2 towards a water hose reel box where the methamphetamine was located. (*Id.* ¶¶ 46–48). CHS2 then left the payment for the drugs in a designated location and left. (*Id.*).

Upon reviewing the government's objection, Probation agreed and applied the leader/organizer enhancement. (ECF 82, 83). Rogers now objects in response, arguing the enhancement should not apply. (ECF 80).

## DISCUSSION

To qualify for the leader/organizer enhancement, a defendant "must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1 cmt. n. 2. "A manager or supervisor in a criminal organization under § 3B1.1 is 'straightforwardly understood as simply someone who helps manage or supervise a criminal scheme.'" *United States v. Beechler*, 68 F.4th 358, 369 (7th Cir. 2023) (quoting *United States v. House*, 883 F.3d 720, 723 (7th Cir. 2018)).

The Sentencing Guidelines identify several factors that the Court can consider in deciding whether a defendant acted as a leader or organizer. These include "the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices," and "the claimed right to a larger share of the fruits of the crime." *Id.* at cmt. n. 4. The Court can also consider "the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *Id.*

It is possible for more than one person to qualify as a leader or organizer of a criminal scheme. *Id.* Further, in smaller criminal enterprises like this one, "the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility." *Id.* But "if all participants in the criminal enterprise are equally culpable, none receive the enhancement." *United States v. Weaver*, 716 F.3d 439, 442 n. 1 (7th Cir. 2013).

The record establishing Rogers as a manager or supervisor of Carter is hardly robust. Both parties agree that Carter mainly sold to CHS1 and Rogers mainly sold to CHS2. To support the leader/organizer enhancement, the government relies on the two instances one week apart where Carter appeared in person to facilitate exchanges between Rogers and CHS2. In the context of the broader scheme, this is not much. But it is enough to apply the leader/organizer enhancement.

These two deals both show Rogers exercising control over Carter to facilitate the drug trafficking enterprise. Rogers argues he and Carter were co-equals, but no evidence suggests Carter ever exercised a similar degree of control over Rogers. The fact of Rogers being out of town for these transactions does not alter the analysis. Carter stood in for Rogers multiple times at Rogers's behest. Even without having access to the precise communications between the two men, the Court

has no trouble finding, based on the evidence before it, that Rogers managed and supervised Carter for the two transactions in a manner that is consistent with the application of the leader/organizer enhancement.

The Guidelines contemplate that the enhancement would apply to defendants even in small schemes like this one which might lack a formal totem pole. *See* U.S.S.G. § 3B1.1 cmt. n. 4. Rogers may not have recruited Carter or had a claim to a bigger slice of the profits than he did. Even so, the Seventh Circuit has made clear that the enhancement can apply to even isolated instances of a defendant directing one other person to engage in criminal activity. *Beechler*, 68 F.4th at 369. The enhancement has applied when a defendant at least once "directed his cousin to make a drug delivery." *Id.* It has also applied when a district court merely made the findings based only on conflicting testimony from about who ran the show for a single drug deal involving three people. *United States v. Hernandez*, 309 F.3d 458, 463 (7th Cir. 2002).

Some Seventh Circuit cases have rejected the application of the enhancement to isolated situations. Most are not sufficiently analogous to this one.[1] But two, *United States v. Collins*, 877 F.3d 362 (7th Cir. 2017) and *United States v. Figueroa*, 682 F.3d 694 (7th Cir. 2012), hew close enough that they should be addressed. *Figueroa* upheld the enhancement, but casted doubt on the applicability of the enhancement to situations when a defendant "merely ask[s] a coconspirator on one occasion to do something." 682 F.3d at 698. *Collins* went further, holding that the enhancement did not apply to a defendant for either (1) directing another independent drug dealer to cover for him on a one-time transaction while he was out of town or (2) referring an interested

---

[1] *See United States v. Schuh*, 289 F.3d 968, 971, 973 (7th Cir. 2002) (enhancement did not apply to bar owner who "directed bar customers wanting drugs to the dealers" in the bar); *United States v. Brown*, 944 F.2d 1377, 1382 (7th Cir. 1991) (status as middleman drug distributor, without more, does not warrant the enhancement); *United States v. Reneslacis*, 349 F.3d 412, 417 (7th Cir. 2003) (enhancement did not apply to defendant who received kickbacks for referring clients to source for fraudulent resident-alien cards).

buyer to another dealer. 877 F.3d at 366–68. At a quick glance, it could be argued that Rogers's conduct squarely intersects the scenarios addressed by *Figueroa* and *Collins*. Not so.

Unlike the hypothetical *Figueroa* posited, Rogers directed Carter to stand in for him more than once. And Rogers and Carter were co-conspirators in a common drug dealing enterprise, unlike the defendant in *Collins* whose interactions were with a separate, wholly independent dealer. Rogers was the intended financial beneficiary in both these transactions. Carter acted as a drug and money courier to facilitate these transactions at Rogers' request. Rogers did not hand off CHS2 to Carter for complete and independent exchanges like the defendant in *Collins*; he instructed and directed Carter to facilitate his own exchange. This is the conduct that the Guidelines contemplate for enhancements under U.S.S.G. § 3B1.1(c).

## CONCLUSION

For these reasons, the leader/organizer enhancement properly applies to Rogers. His objection (ECF 80) is OVERRULED. Sentencing will be scheduled by separate entry.

**SO ORDERED** on May 27, 2026.

s/ *Holly A. Brady*

CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

6